UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-cv-10331 |
| GEORGE JONES EXCAVATING, L.L.C., | ) ) | District Judge: Sara L. Ellis |
| Defendant. | ) | Magistrate Judge: Maria Valdez |

**Defendant's Memorandum Opposing Plaintiff's Summary Judgment Motion and Supporting Its Cross-Summary Judgment Motion**

Defendant George Jones Excavating, LLC provides this memorandum opposing Plaintiff's Summary Judgment Motion and supporting its own summary judgment motion, by stating as follows:

### Introduction

This Court need only resolve a single legal issue in this case – whether Central States Pension Fund's notice of withdrawal liability to George Jones Excavating met ERISA's statutory requirement to: (1) calculate withdrawal liability and notify George Jones of the amount of withdrawal liability; and (2) provide "the schedule of liability payments." Because Central States Pension Fund did not do either, Central States Pension Fund did not trigger George Jones Excavating's obligation to initiate arbitration to challenge the withdrawal liability determination and it filed this action prematurely.

Central States Pension Fund did not calculate George Jones Excavating's withdrawal liability because it did not adjust its calculation of the allocable amount of unfunded vested benefits by the 20-year cap on payments as required by 29 U.S.C. § 1381. Instead, Central States Pension Fund ignored the 20-year cap on withdrawal liability payments and notified George Jones Excavating of an inflated amount representing the allocable amount of unfunded vested benefits without the statutorily-mandated adjustments for calculating withdrawal liability.

Central States Pension Fund's notice of withdrawal liability also did not contain a schedule for liability payments. Instead, Central States Pension Fund substituted a finding of default and demand for immediate payment of its inflated figure without a schedule of payments. In so doing, Central States did not meet the unambiguous terms of ERISA and prevented George Jones Excavating from having the information necessary to determine whether to request review and initiate arbitration.

Summary judgment in favor of George Jones Excavating is appropriate as a result of Central States Pension Fund being unable to establish essential elements of its claim.

## Legal Standard

Federal Rule of Civil Procedure 56 authorizes summary judgment in the moving party's favor as a matter of law in the absence of genuine issues of material fact. When the undisputed facts contained in the pleadings, discovery responses, and affidavits demonstrate the absence of any genuine issues of material fact,

summary judgment furnishes the appropriate remedy to the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

## Argument

The Employee Retirement Income Security Act, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001-1461 ("ERISA") requires an employer that withdraws from an underfunded multiemployer pension plan to pay its share of the underfunding. *See, Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.,* 513 U.S. 414, 417 (1995). ERISA creates "a detailed set of rules for determining, and collecting," withdrawal liability payments. *Id.*

The first step in the process is for the Fund to calculate the amount of an employer's withdrawal liability based on ERISA's lengthy charge-determination section. 29 U.S.C. §§ 1381, 1391; *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 417. ERISA makes an employer withdrawing from a multiemployer pension fund liable for the amount of withdrawal liability. 29 U.S.C. § 1381. ERISA defines withdrawal liability as the "allocable amount of unfunded vested benefits, adjusted" by, as relevant in this case, "the limitation on annual payments under section 1399(c)(1)(B) of this title" (known as the 20-year cap). 29 U.S.C. § 1381(b). ERISA requires the Fund to "determine the amount of the employer's withdrawal liability" and "notify the employer of the amount of withdrawal liability." 29 U.S.C. § 1382.

The second step in the process is determining how an employer will pay its withdrawal liability. 29 U.S.C. § 1399; *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 418. An employer can elect to pay the entire amount upfront as a lump

3

sum or make installment payments. *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 418. ERISA dictates the installment payment method by a statutory formula that determines: (1) a fixed annual payment at a level that roughly matches the employer's typical contributions in prior years; (2) sets an interest rate equal to the rate typically used by the fund; and (3) determines the number of annual payments necessary to fully amortize the withdrawal liability. 29 U.S.C. § 1399(c)(1); *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 418-419. This formula may result in payments over a period of more than twenty years, however, if it does so, ERISA excuses the employer from making any payments beyond the twenty-year mark. 29 U.S.C. § 1399(c)(1)(B); *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 419.

Lastly, ERISA dictates when an employer must begin payments. *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 419-420. ERISA requires the fund to "draw up a schedule for payment and 'demand payment' as 'soon as practicable' after withdrawal. 29 U.S.C. § 1399(b)(1); *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 419-420; *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 197 (1997). The employer must begin payments within 60 days after receiving the notice. 29 U.S.C. § 1399(c)(2); *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 420.

After proper statutory notice, the employer may invoke a dispute-resolution procedure that involves a request for reconsideration by the trustees and ultimately arbitration. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1); *Bay Area Laundry and Dry Cleaning Pension Trust Fund*, 522 U.S. at 197. The employer must pay according to

4

the schedule even if it initiates arbitration under ERISA's pay now, dispute later procedure. *Id.* at 197-198. The fund can declare an employer that does not make payments in accordance with the schedule of payments in default and the Fund may sue to collect either the unpaid amounts or it can accelerate the debt and sue to collect. *Id.*

A fund can also declare an employer in default when it identifies any other event defined in its rules "which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." 29 U.S.C. § 1399(c)(5); *see, Central States, Se. and Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 772-773 (7th Cir. 2010). The Seventh Circuit interpreted the "insolvency default" rule to permit a fund to declare default at the same time it issues the notice of withdrawal liability and an employer must pay the entire amount of withdrawal liability even if it initiates arbitration. *Id.* at 774. Notably, the Seventh Circuit did not decide the issues in this case – whether a fund declaring an insolvency default at the time it sends a notice of withdrawal liability is excused from reducing the allocable amount of unfunded vested benefits by the 20-year cap and from providing a schedule of payments. *Id.* at 775.

I.  **ERISA requires Central States Pension Fund to calculate the amount of George Jones Excavating's withdrawal liability and notify George Jones Excavating of the amount of withdrawal liability.**

ERISA is a detailed regulatory scheme with which courts require strict compliance. *See, e.g., Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 417; *Bay Area Laundry and Dry Cleaning Pension Trust Fund*, 522 U.S. at 196-197. ERISA dictates that an employer that withdraws from a multiemployer plan is

liable to the plan "in the amount determined under this part to be the **withdrawal liability**." 29 U.S.C. § 1381. ERISA defines an employer's "withdrawal liability" as the amount of unfunded vested benefits allocable to the employer (as determined by § 1391), adjusted by:

- (A) the de minimum deduction (calculated pursuant to § 1389);
- (B) partial withdrawal liability reductions (calculated pursuant to § 1386);
- (C) **the 20-year cap (calculated pursuant to § 1399(c)(1)(B));**
- (D) limitations related to a company that sold its assets, liquidated, or dissolved (calculated pursuant to § 1405).

29 U.S.C. § 1381(b). Therefore, even upon a finding of default, a fund must calculate the schedule of payments to determine the adjustment required by the 20-year cap pursuant to 29 U.S.C. § 1381(b)(1)(C).

In this case, Central States Pension Fund did not calculate George Jones Excavating's withdrawal liability, but instead the "allocable amount of unfunded vested benefits." Central States Pension Fund's calculation of withdrawal liability refers to several adjustments (de minimis rule, prior assessment credit, partial prorate, section 4225 limitations), but it did not calculate or include the 20-year cap adjustment. [Joint Statement of Undisputed Material Facts [doc#28] at Ex. B-3 at p.5.](#) Since Central States Pension Fund did not calculate George Jones Excavating's withdrawal liability, it could not have notified George Jones Excavating of "the amount of liability" or demanded payment as required by 29 U.S.C. § 1399(b)(1). Because its notice did not meet the statutory requirements, the notice could not trigger George Jones Excavating's obligation to request review and initiate arbitration under 29 U.S.C. § 1399(b)(2). Because George Jones Excavating did not

6

have an obligation to request review or initiate arbitration, Central States Pension Fund cannot bring this action, which it can only bring following proper notice pursuant to 29 U.S.C. § 1401(b).

Central States Pension Fund's claim is premature because it did not calculate George Jones Excavating's withdrawal liability and did not notify George Jones Excavating of its withdrawal liability. As a result, Central States Pension Fund cannot establish a condition precedent to this lawsuit and summary judgment in favor of George Jones is appropriate.

II. **ERISA mandates a schedule of payments accompany the notice of withdrawal liability.**

ERISA also mandates a fund to provide a withdrawing employer a notice of withdrawal liability that includes a schedule of payments:

> **(b) Notification, demand for payment, and review upon complete or partial withdrawal by employer**
>
> (1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall--
>
>> (A) notify the employer of--
>>
>>> (i) the amount of the liability, and
>>>
>>> (ii) **the schedule for liability payments**, and
>>
>> (B) demand payment in accordance with the schedule.

29 U.S.C. § 1399(b)(1) (second emphasis added). Courts have repeatedly held that a fund must provide a withdrawing employer a schedule of payments and demand payment in order to trigger the employer's obligation to request review and initiate arbitration. In *Bay Area Laundry and Dry Cleaning Pension Trust Fund*, the Supreme Court stated:

7

> The Act does not call upon the employer to propose the amount of withdrawal liability. Rather, it places the calculation burden on the plan's trustees. The trustees must set an installment schedule and demand payment "[a]s soon as practicable" after the employer's withdrawal. § 1399(b)(1). On receipt of the trustees' schedule and payment demand, the employer may invoke a dispute-resolution procedure that involves reconsideration by the trustees and, ultimately, arbitration.

522 U.S. at 197; *see also, Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. at 419-420 ("the statute says that a plan must draw up a schedule for payment and "demand payment" as "soon as practicable" after withdrawal."); *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 598 (7th Cir. 2008) ("a proper notice and demand starts the arbitration clock running and thus determines whether the initiation of arbitration was timely."); *Central States v. Port Huron*, 2016 WL 61805 (N.D. Ill. Feb. 16, 2016) ("For the notice and demand to be effective, i.e., to trigger the duty to initiate arbitration, it 'must include the amount of the liability, a schedule of payments and a demand for payment.'").

Central States Pension Fund's notice to George Jones Excavating did not trigger George Jones Excavating's obligation to request review or initiate arbitration because Central States Pension Fund's notice did not comply with the explicit and unambiguous statutory requirements for the notice to include "the schedule for liability payments." 29 U.S.C. § 1399(b)(1). The schedule of liability payments provides George Jones Excavating information critical to its decision whether to request review or initiate arbitration. The schedule of liability payments would have informed George Jones Excavating of a major limitation on the Company's liability -- the "twenty-year cap." 29 U.S.C. §§ 1381(b), 1399(c)(1)(B). The

8

schedule of payments also provides other information pertinent to George Jones Excavating's decision of whether to challenge the Central States Pension Fund's calculations that a lump sum demand does not: (1) the fund's calculation of the highest average annual number of contribution base units and highest contribution rate pursuant to 29 U.S.C. § 1399(c)(1)(C)(i)(I)-(II); and (2) the interest rate used by the fund that must be consistent with its actuarial assumptions in other contexts pursuant to 29 U.S.C. § 1399(c)(1)(A)(ii).

Central States relies heavily on the Seventh Circuit's decision in *Central States, Southwest and Southeast Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766 (7th Cir. 2010). That case, however, resolves an issue that is closely related, but separate from the issues in this case. The *O'Neill Bros.* case determined that a pension fund could declare an "insolvency" default at the same time it issued the notice of withdrawal liability and demand for payment and file a lawsuit to collect the entire amount of withdrawal liability. 620 F.3d at 775.

The *O'Neill Bros.* did not determine that a finding of default in a notice of withdrawal liability could substitute for a schedule of payments. In fact, if anything the *O'Neill Bros.* case suggested just the opposite. The *O'Neill Bros.* Court specifically noted that the notice of withdrawal and demand for payment stated that "'it includes '[a] copy of . . . the minimum required payment schedule,'" but the record did not include the minimum required payment schedule. *O'Neill Bros. Transfer & Storage Co.*, 620 F.3d at n.2. The employer in *O'Neill Bros.* did not complain that the notice of withdrawal liability and demand for payment did not include a schedule of payments, although the lower court repeatedly required the

9

pension fund to provide updated schedules of payments. *Id.* at 769; *Central States, Se. and Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, Case No. 1:07-cv-05220, Order dated October 21, 2008 [doc#40] (N.D. Ill. Oct. 21, 2008); *Central States, Se. and Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, Case No. 1:07-cv-05220, Order dated February 19, 2009 [doc#46] (N.D. Ill. Feb. 19, 2009).

In this case, Central States Pension Fund created a straw man in framing the issue as whether the notice was deficient because "the Pension Fund demanded full payment of the withdrawal liability, rather than providing Jones Excavating with a schedule allowing for multiple payments over a period of time." Plaintiff's Memorandum [doc#30] at 1. Rather, George Jones Excavating complains that the notice was deficient because it did not contain the statutorily-required schedule of payments. While Central States had the right to declare default and demand full payment in the notice under *O'Neill Bros.*, it did not have the right to withhold the schedule of payments. Central States' withholding the schedule of payments deprived George Jones Excavating of information key to its decision whether to request review and initiate arbitration or to pay the entire amount without challenge – the extent to which the 20-year cap would discount the withdrawal liability amount.

There is no statutory basis for excusing the Fund from providing a schedule of payments. 29 U.S.C. § 1399(b)(1) mandates that a fund provides a "schedule of payments" in the notice of withdrawal liability. 29 U.S.C. § 1399(b)(2) requires an employer to request review within 90 days of its receipt of "the notice described in"

10

§ 1399(b)(1). 29 U.S.C. § 1401(a)(1) requires either party to initiate arbitration within sixty days of the fund's response to the employer's request for review or, if no response was made, within 120 days after the employer requested review. The parties can mutually agree to arbitration within 180 days of the fund's notice of withdrawal liability and demand for payment "under section 1399(b)(1)." 29 U.S.C. § 1401(a)(1). Thus, a notice complying with § 1399(b)(1) triggers an employer's obligation to request review and initiate arbitration. Absent a statutorily compliant notice, the employer's obligations are not triggered.

29 U.S.C. § 1399(c)(1) dictates an employer to pay installment payments in accordance with the statutory formula (and provided to it by the fund's notice of withdrawal liability), except as provided by § 1399(c)(1)(B), 1399(c)(1)(D), 1399(c)(4), or 1399(c)(5). In this case, Central States Pension Fund relies on § 1399(c)(5), which provides:

> In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means--
>
> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
>
> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. § 1399(c)(5) allows a fund to require immediate payment of the outstanding amount of an employer's "withdrawal liability." It does not excuse a

11

fund from calculating withdrawal liability or providing the schedule of payments required by § 1399(b)(1).

By not providing a schedule of payments, Central States Pension Fund violated the statute and did not trigger George Jones Excavating's obligation to request review. Summary judgment in George Jones Excavating's favor is warranted because Central States Pension Fund cannot prove an essential element of its claim: provision of schedule of payments required by § 1399(b)(1).

### III. George Jones Excavating was not required to arbitrate Central States Pension Fund's defective notice.

ERISA requires arbitration of disputes concerning determinations made pursuant to 29 U.S.C. §§ 1381-1399. 29 U.S.C. § 1401. Arbitration of the effectiveness of the notice of withdrawal, schedule of payments, and demand for payment is not required for two reasons. First, failing to follow the unambiguous, explicit statutory requirements to calculate withdrawal liability and provide notice of the withdrawal liability with a schedule of payments is not a "determination" the Fund is permitted to make. Just as a regulation interpreting the statute cannot vary unambiguous statutory requirements, *Chicago Truck Drivers, Helpers and Warehouse Union (Ind.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 533 (7th Cir. 1997), the Fund is not empowered to vary the statutory framework or obtain more than that to which it is entitled. *See, e.g., Central States, Se. and Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1017 (7th Cir. 2001).

Second, the Seventh Circuit has already determined an employer need not arbitrate the issue of defective notice. Proper statutory notice is what triggers an

employer's obligation to request review and initiate arbitration. As recognized by the Seventh Circuit, an ineffective notice cannot be a subject within the exclusive realm of arbitration *Central States, Se. and Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1372-1373 (7th Cir. 1992). Otherwise, funds could easily circumvent ERISA's detailed statutory regime. In *Slotky*, one member of the control group of a company that received notice of withdrawal liability challenged the notice for two reasons: (1) notice on the company was not effective notice on him as a member of the control group; and (2) the notice was defective because it did not include a schedule of payments. *Id.* at 1372-1375. The Court considered and rejected an argument that the issue of whether notice on one control group member was effective as to another member of the control group was a matter exclusively for arbitration. *Id.* at 1372-1373. The Court went on to consider whether the notice was defective -- and thus did not trigger the control group member's obligation to request review and initiate arbitration -- because it did not contain a schedule of payments. *Id.* at 1375. The Court concluded the control group member received effective notice because the fund attached a schedule of payments to a second notice that it sent out. *Id.* at 1375. Courts in other circuits have likewise ruled that a fund must establish proper notice pursuant to 29 U.S.C. § 1399 as a precondition to a suit to collect withdrawal liability payments.[1]

---

[1] *See, DeBreceni v. George LaMoureux Co.*, 629 F. Supp. 598, 601 (D. Mass. Mar. 3, 1986); *Canario v. Lidelco, Inc.*, 782 F. Supp. 749, 753 (E.D.N.Y. Feb. 4, 1992); *Local 478 Trucking and Allied Indus. Pension Fund v. Jayne*, 778 F. Supp. 1289, (D.N.J. Nov. 27, 1991); *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 448 (4th Cir. 2015) (the fund must establish "proper" notice); *Findlay Truck Line, Inc. v. Central States, Se. and Sw. Areas Pension Fund*, 726 F.3d 738, 741, n.1 (6th Cir. 2013); *GCIU-Employer Retirement Fund v. Kutztown Publishing Co.*, 2016 WL 8729950, *2-3 (C.D. Cal. May 6, 2016); Carriers Container Council, Inc. v.

13

In this case, Central States Pension Fund has chosen not to send out a revised notice with a proper calculation of withdrawal liability and a schedule of payments despite George Jones Excavating repeatedly raising this issue in various pleadings and discussions with counsel. Central State Pension Fund could protect its interests and obviate the need for the present motion practice by simply sending out a compliant notice.

## Conclusion

Central States Pension Fund stubbornly refuses to put an end to this dispute. Instead of issuing a new notice of withdrawal liability that contains a proper calculation of withdrawal liability and a schedule of liability payments (as is statutorily required), it keeps pressing forward with an argument that it can ignore clear statutory language. Central States Pension Fund not only refuses to provide a schedule of liability payments, it also refuses to demand payment of George Jones Excavating's "withdrawal liability" by instead demanding the allocable amount of unfunded vested benefits, without adjusting by the 20-year cap that is determined based on the schedule of liability payments to generate the statutorily defined "withdrawal liability."

Central States Pension Fund's conduct has prejudiced George Jones Excavating by artificially inflating its demand while at the same time depriving George Jones Excavating critical information to assess whether it is financially sound to request review and initiate arbitration.

---

Mobile Steamship Assoc. Inc., 896 F.2d 1330, n. 27 (11th Cir. 1990); *Nat'l Shopmen Pension Fund v. Fischer*, 583 F. Supp.2d 95, 96-97 (D.D.C. Oct. 17, 2008).

Central States Pension Fund's conduct is not subject to mandatory arbitration. The Seventh Circuit decided as much in evaluating an employer's identical argument in *Slotky*. Therefore, George Jones Excavating did not waive its right to contest Central States Pension Fund's failure to give the statutorily-mandate notice of withdrawal liability and schedule of liability payments.

Summary Judgment in George Jones Excavating's favor is appropriate because Central States Pension Fund cannot establish an essential element of its claim – that it issued the notice of withdrawal liability and schedule of liability payments and demanded payment of the withdrawal liability.

>Respectfully submitted,
>
>**HESSE MARTONE, P.C.**
>
>By: */s/ Matthew B. Robinson*
>Andrew J. Martone, #6203524
>Matthew B. Robinson, #6283854
>13354 Manchester Road, Suite 100
>St. Louis, MO 63131
>(314) 862-0300 – Telephone
>(314) 862-7010 – Facsimile
>andymartone@hessemartone.com
>mattrobinson@hessemartone.com
>
>*Attorneys for Defendant George Jones Excavating, L.L.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies service of the foregoing document on June 2, 2017 via the Court's CM/ECF system to:

Nicholas G. Whitfield
Central States Funds
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, IL  60018
nwhitfie@centralstatesfunds.org

*Attorneys for Plaintiffs*

    */s/ Matthew B. Robinson*