# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND ) 
SOUTHWEST AREAS PENSION FUND; and ) 
ARTHUR H. BUNTE, JR., as Trustee, ) 
                                      ) 
        Plaintiffs, ) 
                                        )      No. 16 C 10331 
      v. ) 
                                        )      Judge Sara L. Ellis 
GEORGE JONES EXCAVATING, LLC, ) 
an Illinois limited liability company, ) 
                                        ) 
        Defendant. ) 

## OPINION AND ORDER

Having determined that Defendant George Jones Excavating, LLC ("Jones Excavating")

effected a withdrawal from the Central States, Southeast and Southwest Areas Pension Fund (the

"Pension Fund") and not made its withdrawal liability payments, the Pension Fund and Arthur H.

Bunte, Jr., one of the Pension Fund's trustees, filed this action against Jones Excavating.[1]  The

Pension Fund seeks to collect Jones Excavating's withdrawal liability pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension

Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*  The parties have filed

cross-motions for summary judgment.  Because the Court finds that the Pension Fund is entitled

to collect the withdrawal liability, and that Jones Excavating waived any potential defenses it had

to that liability by failing to pursue arbitration, the Court enters judgment for the Pension Fund

and against Jones Excavating.

---

[1] The Court refers to Plaintiffs—the Pension Fund and Bunte—as the Pension Fund throughout this Opinion.

## BACKGROUND[2]

The Pension Fund is a multiemployer pension plan governed by ERISA. Bunte is a present trustee and fiduciary of the Pension Fund, and, with his fellow trustees, a plan sponsor of the Pension Fund. Jones Excavating is a limited liability company organized under Illinois law. During all relevant times, Jones Excavating was subject to collective bargaining and participation agreements with local unions affiliated with the International Brotherhood of Teamsters. Under these agreements, Jones Excavating was required to make pension contributions to the Pension Fund on behalf of certain of Jones Excavating's employees and was also bound by the Pension Fund's Trust Agreement.

The Pension Fund determined that on or about October 17, 2015, Jones Excavating permanently ceased having an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations. The Pension Fund came to this conclusion when Jones Excavating returned a document used to indicate which of its employees performed work covered by the collective bargaining agreement by writing that Jones Excavating was "no longer in business." Doc. 28 ¶ 12. This effected a complete withdrawal from the Pension Fund within the meaning of ERISA § 4203, 29 U.S.C. § 1383. The Pension Fund assessed Jones Excavating with withdrawal liability in the principal amount of $274,587.38, which it determined under ERISA § 4201(b), 29 U.S.C. § 1381(b). Under the Pension Fund's Plan Document, an employer is deemed to be in default when it ceases all or substantially all of its operations. In a default situation, the Plan Document provides that the Pension Fund may require immediate payment of the outstanding amount of an employer's withdrawal liability.

---

[2] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. All facts are taken in the light most favorable to the non-movant in each motion.

On or about July 22, 2016, the Pension Fund issued a notice and demand for payment of the withdrawal liability to Jones Excavating. In this communication, the Pension Fund notified Jones Excavating of the assessed amount of withdrawal liability and demanded full payment of that amount by August 1, 2016 because Jones Excavating was ceasing operations and so would likely be unable to pay. The Pension Fund also enclosed a document entitled "Procedures to Request Review Before the Withdrawal Liability Review Committee Pursuant to Section 6(a) of Appendix E," which had instructions on how Jones Excavating could request review of the assessed withdrawal liability, with Appendix E attached as well. Doc. 28 ¶ 10.

Jones Excavating has not paid any of the assessed withdrawal liability. It did not request review of the withdrawal liability assessment pursuant to ERISA § 4219(b)(2)(A)(i), 29 U.S.C. § 1399(b)(2)(A)(i), within ninety days of receiving the Pension Fund's notice and demand. Nor has Jones Excavating initiated arbitration related to the withdrawal liability assessment pursuant to ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1).

Under the Pension Fund's Trust Agreement, the Pension Fund charges interest on outstanding withdrawal liability at an annualized interest rate of two percent plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which interest is charged. The Trust Agreement also provides for liquidated damages of twenty percent of the delinquent withdrawal liability. Finally, the Trust Agreement provides that the Pension Fund is entitled to post-judgment interest on the entire withdrawal liability judgment balance at an annualized interest rate of two percent plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which interest is charged, compounded annually.

# LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering the Pension Fund's motion for summary judgment, the Court views all evidence in the light most favorable to Jones Excavating, and when considering Jones Excavating's motion for summary judgment, the Court views all evidence in the light most favorable to the Pension Fund. *Id.*

## ANALYSIS

"The MPPAA protects employees in multiemployer pension plans by requiring employers who withdraw from such plans to pay their share of 'unfunded vested benefits.'" *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 595 (7th Cir. 2008) (quoting 29 U.S.C. § 1381(b)(1)). This is known as withdrawal liability. 29 U.S.C. § 1399(b). Once a fund has determined that an employer has effected a withdrawal from the plan, it must notify the employer of its withdrawal liability, set a schedule for liability payments, and demand payment. 29 U.S.C. § 1399(b)(1); *Chicago Truck Drivers*, 525 F.3d at 595. After receiving the fund's notice and demand, the employer may request a review of the fund's determination of its withdrawal liability. 29 U.S.C. § 1399(b)(2). To the extent the employer wishes to dispute the plan's assessment of withdrawal liability, it must do so through arbitration. *Chicago Truck Drivers*, 525 F.3d at 595 (citing 29 U.S.C. § 1401(a)(1)); *see Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 902 (7th Cir. 1988) ("Congress made it mandatory to resolve withdrawal disputes between an employer and a [fund] through arbitration[.]"). The employer must initiate arbitration within 180 days of the employer receiving the fund's notice and demand or within 60 days of the employer receiving the fund's response to its review request, whichever occurs first. 29 U.S.C. § 1401(a)(1). If an employer does not timely request arbitration, it waives any defenses it has to the fund's determination of withdrawal liability and "the assessment becomes due and owing on the schedule set forth by the [fund]." *Chicago Truck Drivers*, 525 F.3d at 595 (quoting 29 U.S.C. § 1401(b)(1)) (internal quotation marks omitted); *see Robbins*, 866 F.2d at 902 (because arbitration of withdrawal disputes is mandatory, a company "cannot bypass arbitration and litigate a defense to a withdrawal liability claim").

Here, the Pension Fund and Jones Excavating do not dispute that Jones Excavating effected a complete withdrawal from the Pension Fund, giving rise to withdrawal liability under the MPPAA. But the parties dispute whether the Pension Fund's notice and demand to Jones Excavating constituted proper notice of Jones Excavating's withdrawal liability. According to Jones Excavating, because the notice and demand were not proper, it had no obligation to request review and initiate arbitration and so cannot now be held liable for the withdrawal liability that the Pension Fund claims is due and owing.

On or about July 22, 2016, Jones Excavating received a notice and demand from the Pension Fund setting forth the amount of withdrawal liability the Pension Fund determined Jones Excavating owed and demanding full payment of that amount by August 1, 2016. Although withdrawal liability typically is paid in installments, a fund may require immediate payment of the entirety of the amount assessed in the event of a default. 29 U.S.C. § 1399(c)(5); *Cent. States Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 768 (7th Cir. 2010). The plan's documents can define a default, 29 U.S.C. § 1399(c)(5)(B), and in this case, the documents defined default to include "the cessation of all of an Employer's operations, or the liquidation of all or substantially all of an Employer's assets." Doc. 28 ¶ 13. This is commonly referred to as an "insecurity default." *O'Neill Bros.*, 620 F.3d at 771. Jones Excavating informed the Pension Fund that it was no longer in business, leading the Pension Fund to declare such an insecurity default. Thus, the Pension Fund demanded that Jones Excavating immediately pay the entire assessed withdrawal liability and did not include a schedule of payments in its notice to Jones Excavating. This, according to Jones Excavating, made the Pension Fund's notice defective. *See* 29 U.S.C. § 1399(b)(1)(A) (requiring that the notice include the "amount of the liability" and "the schedule for liability payments"). Jones

Excavating also takes issue with the fact that the Pension Fund did not take into account a twenty-year cap on withdrawal liability payments when calculating the withdrawal liability. *See* 29 U.S.C. § 1381 (setting forth method for calculating withdrawal liability).

Several problems arise for Jones Excavating with its arguments. First, even if the Pension Fund incorrectly calculated the withdrawal liability by failing to take into account the twenty-year cap, this does not render the notice defective as the notice clearly set forth the amount the Pension Fund determined Jones Excavating owed. Jones Excavating's disputes concerning the calculation of that amount do not negate the fact that the notice clearly set forth the amount allegedly owed. Next, the Seventh Circuit has considered the default provision at issue here, determining that its invocation means that the entire amount of an employer's withdrawal payment is due immediately upon default. *O'Neill Bros.*, 620 F.3d at 775. In *O'Neill Bros.*, the fund had not provided a schedule of interim payments to the employer with its notice of default, but this failure to include a schedule was not enough to disturb the district court's entry of judgment for the fund. *See id.* at 769 (discussing the procedural history of the case and noting the district court's conclusion that the fund had provided the employer with a proper demand for payment prior to bringing action even though that demand did not include a schedule of payments); *Chicago Truck Drivers*, 525 F.3d at 598 (noting that the Seventh Circuit has been "indulgent about the specific form a notice and demand may take"). None of the cases Jones Excavating cites in support of requiring a schedule of payments prior to finding notice proper so as to allow suit to collect withdrawal liability payments involved a similar situation of an insecurity default. *See* Doc. 32 at 13 n.1 (citing cases, none of which considered how an insecurity default affected the requirement for a schedule of payments).

More importantly, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under section 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1); *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 262 (2d Cir. 1990) (disputes "concerning the notice or amount of withdrawal liability 'shall be resolved through arbitration'" (quoting 29 U.S.C. § 1401(a)(1)). Because Jones Excavating did not challenge the validity of the notice or the calculation of the assessment in arbitration, instead choosing to sit back and do nothing, it has waived its ability to object on these bases. *See Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 582 (employer's failure to complete arbitration "means that [the fund] prevails"); *Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. Laidlaw Indus., Inc.*, 745 F. Supp. 1016, 1026 (D. Del. 1990) (failure to arbitrate served as waiver of right to contest fact that notice did not include schedule of payments).

Therefore, because Jones Excavating cannot challenge the withdrawal liability assessment in litigation, the Pension Fund can recover the assessed withdrawal liability from Jones Excavating. In addition to the principal amount assessed, the Pension Fund requests interest, liquidated damages, costs, and attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2). These requested damages under § 1132(g)(2) apply to cases involving withdrawal liability and are mandatory in successful suits. *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992). The Pension Fund's Trust Agreement also provides for post-judgment interest. The Court finds it appropriate to award the Pension Fund these mandatory add-ons, as provided for by statute and the Pension Fund's Trust Agreement. The Pension Fund shall submit documentation to establish the amounts to which they claim they are entitled.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for summary judgment [27] and denies Jones Excavating's motion for summary judgment [33]. The Court enters judgment against Jones Excavating. Plaintiffs have until December 1, 2017 to submit to the Court documentation establishing the amount to which Plaintiffs claim they are entitled.

Dated: November 14, 2017

_____
SARA L. ELLIS
United States District Judge